# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>Samsung Galaxy S22 Ultra 5G IMEI 359433582381000 and Serial Number: R5CT50WZSWK located at 45764 Landon Road, Wellesley Island, NY 13640 | Case No.   5:23-MJ-703 (ML) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing in or harboring certain aliens |

The application is based on these facts:

See attached affidavit

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joshua N. Todd, Border Patrol Agent -- Intelligence
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date:   November 30, 2023

*Judge's signature*

City and state:   Binghamton, New York

Hon. Miroslav Lovric, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Joshua N. Todd, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of one Samsung Galaxy S22 Ultra 5G IMEI 359433582381000 and Serial Number: R5CT50WZSWK (hereinafter "the Device"), which is currently in the custody of U.S. Border Patrol at 45764 Landon Road, Wellesley Island, NY 13640, for the purpose of identifying electronically stored data particularly described in Attachment B (*i.e.*, authorizing a search for evidence and instrumentalities of violations of 8 U.S.C. § 1324(a)(1)(A)(ii) (transportation or movement of alien within the United States), (a)(1)(A)(v)(I) (conspiracy to commit the foregoing offense), (a)(1)(B)(i) (conduct for purpose of commercial advantage or private financial gain), (a)(2) (bringing an alien to the United States), (a)(2)(B)(ii) (conduct for purpose of commercial advantage or private financial gain).

2.  I am a Border Patrol Agent-Intelligence (BPA-I) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), Buffalo Sector Intelligence Unit and assigned to the Wellesley Island Border Patrol Station. I have been a Border Patrol Agent since July 2010. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agent's authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal

Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3. I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

5. On November 28, 2023, the Honorable Miroslav Lovric signed a criminal complaint charging Alexandra Arroyave De Rubio and Angel Martinez De Los Santos with conspiracy to commit alien smuggling, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) & (v)(I). A copy of the complaint and supporting affidavit is attached hereto as **Exhibit 1**, and the facts in the affidavit are incorporated herein by reference.

6. The Device was seized from Arroyave De Rubio incident to her arrest and therefore was with her during the offense conduct. It is currently being held at a Border Patrol facility located at 45764 Landon Road, Wellesley Island, NY 13640.

7. I know from my training and experience, including my involvement in multiple similar alien smuggling events, that individuals involved in alien smuggling rely heavily upon their cellular telephones to commit the offense and that evidence of their commission of the offenses is routinely found on such devices. For example, smugglers use cellular telephones to arrange the

crossing from Canada into the United States, coordinate pickups, and communicate with co-conspirators with respect to the foregoing. It is common for such individuals to use applications on the cellular telephone that use GPS data for location information, messaging applications to communicate, and camera applications to take/share photographs of locations relevant to the smuggling event.

8. The Device is currently in the lawful possession of the United States Border Patrol and has been since November 27, 2023. I seek this warrant to be certain that further examination of the Device will comply with the Fourth Amendment and other applicable laws.

## **TECHNICAL TERMS**

9. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on

Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e. PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

   f. Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

   g. Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

10. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

11. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

12. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to facilitate an alien smuggling crime, that device will generally serve as both an instrumentality for committing the crime and as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device also is likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain:

data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

13. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

14. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

15. I submit that this affidavit establishes probable cause for the requested warrant.

Attested to by the applicant by telephone in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Joshua N. Todd
Border Patrol Agent – Intelligence

I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on November 30, 2023, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Miroslav Lovric
U.S. Magistrate Judge

# Exhibit 1

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>Alexandra ARROYAVE-De Rubio; and<br>Angel MARTINEZ-De Los Santos,<br><br><br>**Defendants.** | )<br>)<br>)   Case No.   5:23-MJ-696 (ML)<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of November 26, 2023 in the county of Jefferson in the Northern District of New York the defendants violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) & (v)(I) | Conspiracy to commit alien smuggling |

This criminal complaint is based on these facts:

☒    Continued on the attached sheet.

_____
Complainant's signature
Border Patrol Agent Evan Drake
Printed name and title

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   November 28, 2023

_____
Judge's signature

City and State:   Binghamton, New York        Hon. Miroslav Lovric, U.S. Magistrate Judge
Printed name and title

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Evan Drake, having been duly sworn, depose and state as follows:

I am a Border Patrol Agent with the United States Department of Homeland Security ("DHS"), United States Border Patrol ("BP"). I have been so employed since August 31, 2009. As a part of my duties at BP, I have investigated violations of the Immigration and Nationality Act and other violations of the United States Code, including Title 8, United States Code, Sections 1324, 1325 and 1326.

This affidavit is made in support of an application for a criminal complaint charging Alexandra ARROYAVE-De Rubio and Angel MARTINEZ-De Los Santos with the violation of Title 8 U.S.C. § 1324(a)(1)(A)(ii) & (v)(I) (conspiracy to commit alien smuggling).

On November 26, 2023, Border Patrol Agent (BPA) Trevor Baize, BPA Ross Lamore, and BPA Graham Whalen were working assigned duties in Jefferson County, New York, as part of the WIB ASU. While patrolling the area of Philadelphia, NY, BPA Baize, BPA Lamore, and BPA Whalen received information that a 2022 Toyota Corolla bearing New York license plate KAY6202 was traveling southbound from Hopkinton, New York on State Route (SR) 11B.

ASU also received information that the Toyota fit current Tactics, Techniques, and Procedures (TTPs) for vehicles being used for migrant smuggling. Specifically, SR11B is a prevalent route used by migrant smugglers to transport individuals who cross the international border illegally. WIB ASU has apprehended numerous individuals smuggling migrants along SR11B since November of 2022, when the WIB ASU was formed. In each event, the vehicles had travelled long distances towards the U.S/Canada International Boundary, spent a short amount of time near the border, and made a quick turnaround before travelling back southbound.

In this case, the Toyota had traveled north from south of Pulaski, New York in the early afternoon of November 26, 2023, and continued north on Interstate 81 to State Route 37 toward Constable, New York. Constable, New York is located approximately 5 miles south of the United States/Canada International Boundary and is the origin of multiple migrant smuggling events based on other arrests made by WIB ASU. Smugglers commonly use this location to illegally cross people and contraband into the United States because of its remote and rural landscape and proximity to Montreal, Canada. Prior arrest data, post arrest interviews, and intelligence information indicate many Mexican citizens fly into the Montreal airport from Mexico, with the intention of entering the United States illegally.

Record checks on KAY6202 revealed the registered owner of the vehicle resides in Burdett, New York. The distance between Burdett, New York and Constable, NY is approximately 260 miles. ASU agents observed the vehicle as it passed south on SR 11B through Philadelphia, New York heading toward Interstate 81.

On November 26, 2023, at approximately 8:53 p.m., BPA Lamore saw multiple people inside the vehicle as it entered a Stewart's Shops gas station in Philadelphia, New York. The passengers appeared to BPA Lamore to be adults of Hispanic descent, and he observed nervous behavior by the driver (later identified as Alexandra ARROYAVE De Rubio (ARROYAVE)) who stopped the middle of the entrance to the gas station when no visible obstruction was present. BPA Lamore then observed the vehicle park at a gas pump. ARROYAVE exited walked toward the gas station store. BPA Lamore observed her quickly return to the vehicle without making any purchase inside the store and without pumping gas. The vehicle then pulled out of the Stewart's Shops parking lot. Based on their observations and prior intelligence information received, BPA Baize, BPA Lamore, and BPA Whalen activated their emergency lights and sirens and conducted a vehicle stop.

BPA Baize approached the vehicle and observed five individuals inside. BPA Baize identified himself as a United States Border Patrol Agent and questioned the occupants as to their citizenship. ARROYAVE (the driver) was ascertained to be a citizen of Venezuela. BPA Lamore observed her appearing to try to delete dropped pins from Google maps, a mobile application that allows users to place "pins" at locations of interest or significance to them, including meeting locations. The passengers, later identified as Enrique HERNANDEZ-Serna (HERNANDEZ-Serna), Israel HERNANDEZ-Hernandez (HERNANDEZ), Angel MARTINEZ-De Los Santos (MARTINEZ) and Lisandro MARTINEZ-Baltazar (MARTINEZ-Baltazar) were ascertained to be citizens and nationals of Mexico without any legal immigration documents allowing them to be in, reside, or work in the United States legally.

At approximately 8:55 p.m., BPA Baize placed the subjects under arrest for being in the United States illegally and arranged for transportation back to the Wellesley Island Station.

At approximately 1:54 a.m., on November 27, 2023, ARROYAVE was read her Miranda Rights by Border Patrol Agent-Intelligence (BPA-I) Josh Todd and witnessed by BPA Trevor Baize. ARROYAVE acknowledged and said that she understood her rights and agreed to answer questions without an attorney present. The interview was conducted in the English language. No interpreter was needed.

ARROYAVE stated she was born in Venezuela. ARROYAVE stated she came to the United States from Venezuela on a tourist visa in 2018 and has lived in Watkins Glen, NY for the last three to four years. ARROYAVE stated that she drives for UBER and left Watkins Glen, NY at 11:00 a.m. to pick up Angel. ARROYAVE stated that Angel works at a farm and that she gives rides to the farmers. ARROYAVE stated that Angel told her he needed to pick some people up. ARROYAVE stated they both had maps on their phones of where to go. ARROYAVE stated they arrived at Malone, NY around 5:00 p.m. ARROYAVE stated they were originally going to pick the people up at Walmart in Malone, NY, but had to leave there to pick them up somewhere else on the street. ARROYAVE stated that Angel said the people to be picked up were not there. ARROYAVE stated they travelled for fifteen minutes to pick them up, and they were waiting on the side of the road. ARROYAVE stated that Angel told her where to go and that three Mexican men got in her car. ARROYAVE originally stated this was her first time picking anyone up by the border but later admitted that she had been up to Malone, NY a couple days prior to pick people up. ARROYAVE stated that she was supposed to be paid $800.00 for this trip to Malone, NY. ARROYAVE stated that Angel was to pay her when they reached their destination.

At approximately 4:24 a.m., on November 27, 2023, MARTINEZ was read his Miranda rights by Border Patrol Agent-Intelligence (BPA-I) Josh Todd and witnessed by BPA Trevor Baize. MARTINEZ acknowledged that he understood his rights and agreed to answer questions without the presence of an attorney. Interpreted by Ad Astra interpreter ID: 3736.

MARTINEZ stated he was born in Mexico and entered the United States illegally through Nogalas, AZ in 2013. MARTINEZ stated that he went to pick up three people that were going to work at the farm where he works. MARTINEZ stated the three people he was picking up have family at the farm. MARTINEZ stated the people that were crossing into the United States from Canada were going to pay Alexandra as an UBER driver. MARTINEZ stated that Alexandra was going to be paid around $850.00 for the trip. MARTINEZ stated that he has travelled with Alexandra four times to the border previously.

At approximately 3:32 a.m., on November 27, 2023, HERNANDEZ was read his Miranda rights by Border Patrol Agent-Intelligence (BPA-I) Josh Todd and witnessed by BPA Trevor Baize. HERNANDEZ acknowledged that he understood his rights and agreed to answer questions without the presence of an attorney. The interview was conducted in the English language. No interpreter was needed.

HERNANDEZ stated he was born in Mexico and travelled from Mexico to Montreal on November 24, 2023. HERNANDEZ stated he walked across the border from Montreal on November 26, 2023, with two friends. HERNANDEZ stated that Angel gave them a pin of where to cross the border. HERNANDEZ stated he paid $9,000.00 for his passport, ETA status in Canada, and his travel to Canada. HERNANDEZ stated he had to pay more for crossing the border. HERNANDEZ stated that someone in Canada called Angel and told him there were people needing to cross the border. HERNANDEZ stated they were hiding in the woods before being picked up by Angel. HERNANDEZ stated that Angel told him he had work at a farm for him. HERNANDEZ stated that Angel called someone in Mexico to let them know they had crossed the border.

Based on the foregoing and my training and experience, there is probable cause to believe that the defendants conspired with each other to commit alien smuggling in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) & (v)(I).

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

_____
Evan Drake
Border Patrol Agent


I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on November 28, 2023 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Miroslav Lovric
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is the following.

    a.  Samsung Galaxy S22 Ultra 5G IMEI 359433582381000 and Serial Number: R5CT50WZSWK (the "Device").



The Device is depicted above and is currently located at U.S. Border Patrol at 45764 Landon Road, Wellesley Island, NY 13640.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

9

**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 8 U.S.C. § 1324(a)(1)(A)(ii) (transportation or movement of alien within the United States), (a)(1)(A)(v)(I) (conspiracy to commit the foregoing offense), (a)(1)(B)(i) (conduct for purpose of commercial advantage or private financial gain), (a)(2) (bringing an alien to the United States), (a)(2)(B)(ii) (conduct for purpose of commercial advantage or private financial gain) and involve Alexandra Arroyave De Rubio since November 25, 2023, including:

   a. Contacts and/or communications between the user of the Device and any person concerning the bringing of aliens to the United States from Canada and/or the transportation of any aliens inside the United States to another location within the United States, including evidence of a conspiracy to bring aliens to the United States and/or transport aliens within the United States;

   b. Records concerning the payment or receipt of money for bringing to the United States or transporting within the United States any aliens;

   c. Photographs or recordings of any pickup locations, rendezvous points, and/or crossing locations used by any aliens and/or anyone bringing them to and/or transporting them within the United States;

   d. Photographs or recordings of any aliens or coconspirators or others involved in the bringing to the United States and/or transportation within the United States of any aliens;

   e. Evidence of intent to bring aliens to the United States and/or to transport aliens within the United States and/or of the bringing into the United States or transportation within the United States of individuals with a reckless disregard for

whether such people were aliens that had come to, entered, or remained in the United States in violation of law, or had not received prior authorization to come to, enter, or reside in the United States;

f. Location information reflecting the route of travel for any trip related to the bringing to the United States from Canada any aliens and/or the transportation within the United States of any aliens;

g. Evidence of the user(s) of the Device and/or who controlled the Device related to the bringing of aliens to the United States and/or the transportation of aliens within the United States.

2. As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.